965 F.2d 558
 37 Soc.Sec.Rep.Ser. 373, Medicare & Medicaid Guide
P 40,371
BOARD OF TRUSTEES OF KNOX COUNTY (INDIANA) HOSPITAL, d/b/a
Good Samaritan Hospital, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, in his capacity as Secretary of the
Department of Health and Human Services, Defendant-Appellee.
 No. 91-2265.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 13, 1992.
Decided June 25, 1992.
As Amended on Denial of Rehearing
July 14, 1992.
 
 N. Kent Smith (argued), William S. Hall, William H. Thompson, Hall, Render, Killian, Heath & Lyman, Indianapolis, Ind., for plaintiff-appellant.
 Deborah J. Daniels, U.S. Atty., Winfield D. Ong, Office of the U.S. Atty., Indianapolis, Ind., Stuart M. Gerson, Office of the U.S. Atty. Gen., Washington, D.C., Anthony J. Steinmeyer, Joseph W. Lobue, Anne L. Weismann, Steve Frank, Lowell Sturgill (argued), Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., for defendant-appellee.
 Before CUMMINGS, CUDAHY, and POSNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Knox County Hospital seeks review of the Secretary's denial of the Hospital's Medicare reimbursement adjustment for fiscal year 1984. The Hospital claims that it should have been classified as a rural referral center in 1984 under 42 U.S.C. § 1395ww(d)(5)(C), and is therefore entitled to a higher reimbursement rate for its treatment of Medicare patients in that year.[1] Conceding that it does not meet the regulatory definition of a rural referral center in effect in 1984, the Hospital complains that the regulatory definition was contrary to its implementing statute and otherwise arbitrary and capricious. The district court ruled on the pleadings that the Hospital had no standing, or alternatively that the agency's action was committed to its discretion by law and therefore judicial review was unavailable under 5 U.S.C. § 701(a)(2). We affirm, but on the ground that the regulation in question was consistent with the statute and was not arbitrary or capricious.
 
 I.
 
 2
 The facts are not disputed in this case. The Hospital is a full-service, acute-care hospital with 344 beds located in Vincennes, Indiana. It requested reimbursement as a rural referral center in its 1984 cost report filed with Blue Cross and Blue Shield of Indiana, the fiscal intermediary appointed by the defendant pursuant to 42 U.S.C. § 1395h to help process Medicare claims. This request was denied. Under the procedures set forth in 42 U.S.C. § 1395oo, the Hospital appealed to the Provider Reimbursement Review Board, which granted the Hospital's request for expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(1).
 
 
 3
 The Hospital claimed in district court that the Secretary's referral center regulation at 49 Fed.Reg. 320 (1984) violated the Medicare statute by denying the Hospital reimbursement as a rural referral center for its 1984 cost year. The rule was allegedly arbitrary and capricious. The Hospital also claimed that the denial of a reimbursement adjustment for the 1984 cost year deprived it of property without due process of law in violation of the Fifth Amendment.[2] Among other relief, the Hospital requested a judgment against the defendant in the amount of $711,426.00.
 
 
 4
 The district court entered judgment on the pleadings in favor of the defendant pursuant to Fed.R.Civ.P. Rule 12(c). The court first concluded that since the Hospital failed to establish that the definition of a rural referral center in the regulation was invalid, it lacked standing to bring suit because it failed to meet this definition. Alternatively, the district court held that judicial review was not proper under 5 U.S.C. § 701(a)(2) because the agency action here was committed to agency discretion.
 
 II.
 
 5
 We can quickly dispose of any contention that the Hospital lacks Article III standing in this case. The Hospital's claim that it is entitled to reimbursement under the Medicare statute without a doubt presents an injury traceable to the defendant that a favorable decision by the district court would remedy. Article III's requirement that federal courts adjudicate only live cases or controversies is therefore met. Love Church v. City of Evanston, 896 F.2d 1082, 1084-1085 (7th Cir.1990), certiorari denied, --- U.S. ----, 111 S.Ct. 252, 112 L.Ed.2d 210. The district court's confusion over the standing issue was a result of a somewhat unusual regulatory structure in effect during 1984, a topic to which we now turn.
 
 
 6
 In the Social Security Amendments of 1983, Pub.L. No. 98-21, 97 Stat. 165, Congress implemented a new method for reimbursing hospitals participating in Medicare known as the Prospective Payment System ("PPS"). Discarding a system based on reasonable costs of actual services performed, Congress decided that hospitals should be reimbursed according to pre-set rates for various "diagnosis-related groups" ("DRGs"). See generally 42 U.S.C. § 1395ww(d). The PPS tracks cost data (used to calculate the DRG pre-set rates) separately for urban and rural hospitals; therefore, urban hospitals are generally speaking entitled to more reimbursements because of their greater costs. 42 U.S.C. § 1395ww(d)(2)(D). Recognizing that certain hospitals might be entitled to different treatment, Congress authorized several exceptions to the general payment scheme, including the following statutory provision regarding referral centers in effect in 1984:
 
 
 7
 The Secretary shall provide for such exceptions and adjustments to the payment amounts established under this subsection as the Secretary deems appropriate to take into account the special needs of regional and national referral centers (including those hospitals of 500 or more beds located in rural areas) * * *.
 
 
 8
 42 U.S.C. § 1395ww(d)(5)(C)(i) (1984).
 
 
 9
 The following regulation (in effect for fiscal year 1984) implemented the referral center exception:
 
 
 10
 (g) Referral centers.
 
 
 11
 (1) Criteria. HCFA [a Health and Human Services ("HHS") agency] will consider a hospital's request for a referral center adjustment to the hospital's prospective payment rates only if the hospital is an acute care hospital that has a provider agreement under Part 489 of this chapter to participate in Medicare as a hospital; and
 
 
 12
 (i) Is located in a rural area (as defined in § 405.473(b)(6)) and has 500 or more beds available for use; or
 
 
 13
 (ii) Has an inpatient population such that at least 50 percent of its Medicare patients are referred from other hospitals or from physicians not on the staff of the hospital. In addition, at least 60 percent of the hospital's Medicare patients must live more than 25 miles from the hospital, and at least 60 percent of all the services that the hospital furnishes to Medicare beneficiaries must be furnished to beneficiaries who live more than 25 miles from the hospital.
 
 
 14
 (2) Payments to rural referral centers with 500 or more beds. A hospital that meets the criteria of paragraph (g)(1)(i) of this section will be paid prospective payments per discharge based on the applicable urban payment rates as determined in accordance with § 405.473(b)(10) or (c)(6), as adjusted by the hospital's area wage index.
 
 
 15
 49 Fed.Reg. 320 (1984), 42 C.F.R. § 405.476(g).[3]
 
 
 16
 Under the regulation, a hospital conceivably could be classified as a referral center under either subsection (i) or (ii). However, a hospital would be entitled to urban payment rates only if it qualified under subsection (i) as a rural referral center with over 500 beds. All urban referral centers, as well as rural referral centers with less than 500 beds, would not be entitled to any different Medicare reimbursements under the 1984 regulation. Hence the district court's confusion over standing--the Hospital apparently spent some time attacking the specific requirements of subsection (ii) as unreasonable, but even if the requirements were different, the court reasoned, under section (2) the Hospital would not be entitled to urban payment rates because it had less than 500 beds. It is apparent, however, that the Hospital has standing to argue that the regulation itself is arbitrary or capricious.
 
 
 17
 Admittedly, the regulation seems somewhat odd. What, one might wonder, is the purpose for subsection (ii), since any hospital meeting the criteria established there is not entitled to any different treatment? It seems that the Secretary was interested in gathering data, since hospitals attempting to be classified under subsection (ii) were asked to submit cost data so that the Secretary could promulgate a more informed regulation. See 49 Fed.Reg. 276. As noted below, the legislative history suggests that Congress wanted the Secretary to take this investigatory approach.
 
 III.
 
 18
 The Secretary contends that the Hospital is not entitled to challenge its 1984 referral center regulations in court because such matters are "committed to agency discretion by law" under Section 701(a)(2) of the Administrative Procedure Act (5 U.S.C. § 701(a)(2)). This Section where applicable trumps the general presumption that final agency actions are reviewable by courts under Section 702 of the APA ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action * * * is entitled to judicial review thereof."). Section 701(a)(2) is a very narrow exception. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820-21, 28 L.Ed.2d 136.
 
 
 19
 The Supreme Court discussed Section 701(a)(2) in detail in Heckler v. Chaney, 470 U.S. 821, 828-829, 105 S.Ct. 1649, 1654-1655, 84 L.Ed.2d 714:
 
 
 20
 On its face, the section does not obviously lend itself to any particular construction: indeed, one might wonder what difference exists between § (a)(1) [providing for no judicial review when "statutes preclude judicial review"] and § (a)(2). The former section seems easy in application; it requires construction of the substantive statute involved to determine whether Congress intended to preclude judicial review of certain decisions. * * * But one could read the language "committed to agency discretion by law " in § (a)(2) to require a similar inquiry. In addition, commentators have pointed out that construction of § (a)(2) is further complicated by the tension between a literal reading of § (a)(2), which exempts from judicial review those decisions committed to agency "discretion," and the primary scope of review prescribed by § 706(2)(A)--whether the agency's action was "arbitrary, capricious, or an abuse of discretion." How is it, they ask, that an action committed to agency discretion can be unreviewable and yet courts still can review agency actions for abuse of that discretion?
 
 
 21
 The Court attempted to resolve these puzzles by formulating the following standard: "[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 830, 105 S.Ct. at 1655. The Court concluded that there was no meaningful standard against which to judge the FDA's decision not to begin an enforcement action relating to the safety of drugs used for lethal injection by states implementing the death penalty.
 
 
 22
 Section 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based." Webster v. Doe, 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632. In deciding whether Congress intended to commit a particular action to an agency's discretion as a matter of law, we must consider the statutory language, the structure of the statute, any relevant legislative history if the statute is ambiguous, and the nature of the agency action being challenged. Singh v. Moyer, 867 F.2d 1035, 1038 (7th Cir.1989). The gist of the Hospital's challenge is that the regulation is contrary to criteria set forth in the statute's legislative history. Our analysis of the factors listed above leads to the conclusion that judicial review is proper in this case.
 
 
 23
 An important reason for deciding that judicial review is appropriate is the nature of the agency action being challenged here. Whether a regulation is contrary to its authorizing statute is almost always a legal question appropriate for judicial review. This case is similar to Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), where the Secretary's authorization to enact regulations "as he may deem proper to carry out the provisions" of the statute was found not to commit to his discretion the definition of "making a crop." Id. at 166, 90 S.Ct. at 837-38. Where the principal dispute relates to the meaning of a statutory term, the controversy is ultimately resolved by application of canons of statutory construction. Id. Here the primary dispute relates to the meaning of the statutory phrase "regional and national referral center." Agency actions are more likely to be committed to agency discretion when they involve factual disputes, particularly those of a politically sensitive nature. E.g., Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047 (decision by the Director of the CIA to fire an employee within his discretion); Specter v. Garrett, 1992 WL 76104, 1992 U.S.App. LEXIS 6969, No. 91-1932 (3rd Cir. April 17, 1992) (Department of Defense's substantive recommendation of military bases to close not reviewable, but alleged failure to follow procedures mandated by statute is reviewable); Scalise v. Thornburgh, 891 F.2d 640 (7th Cir.1989) (decision to deny international prison transfer committed to agency discretion), certiorari denied, 494 U.S. 1083, 110 S.Ct. 1815, 108 L.Ed.2d 945.
 
 
 24
 The real dispute here is the nature of the obligation created by the following words of Section 1395ww(d)(5)(C): "The Secretary shall provide for such exceptions and adjustments * * * as the Secretary deems appropriate to take into account the special needs of regional and national referral centers * * *." (emphasis added). In a battle of underlining, the Hospital emphasizes the phrase "shall provide," whereas the Secretary emphasizes the phrase "as the Secretary deems appropriate." The Hospital, then, sees the statute as imposing a mandatory duty on the Secretary, with any discretion on the Secretary's part limited to the amount of adjustment to give to referral centers. The Secretary views the statute as no more than a grant of authority that he may or may not use in his discretion.
 
 
 25
 The statute is unfortunately ambiguous on this score. After the Secretary has decided to implement a regulation, however, it is difficult to conclude that the regulation cannot be reviewed for its consistency with the statute, especially since the Secretary conceded at oral argument that the phrase "special needs of regional and national referral centers" in the statute provides a standard for a court to apply. Congress easily could have drafted a statute that more clearly placed the content of a regulation in the Secretary's discretion. For example, in Greater New York Hospital Association v. Mathews, 536 F.2d 494 (2d Cir.1976), the statute clearly left the matter of timing of certain Medicare payments in the discretion of the Secretary, as long as payments were made at least once a month--"the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly)." A court faced with that type of statutory language could freely ignore arguments that a certain payment scheme that provided for at least monthly payments was yet unreasonable for some reason. On the other hand, it is less obvious that a court can ignore an argument that a regulation totally contravenes "the special needs of regional and national referral centers."
 
 
 26
 The structure of the Medicare Act also supports a conclusion that the Secretary's referral center regulation is reviewable. An important consideration when examining the structure of a statute for this purpose is whether the statute exudes deference to the implementing agency. The Supreme Court in Webster noted that various provisions of the National Security Act exhibit "extraordinary deference" to the Director. 486 U.S. at 600-601, 108 S.Ct. at 2052-53. Similarly, this Court in Arnow v. United States Nuclear Regulatory Commission, 868 F.2d 223 (1989), certiorari denied, 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 29, noted that the "entire scheme" of the Atomic Energy Act "vests very wide discretion in the agency." Id. at 233. See also Federal Deposit Ins. Corp. v. Bank of Coushatta, 930 F.2d 1122 (5th Cir.1991) (numerous provisions of International Lending Supervision Act as well as its legislative history indicates that FDIC's decision to issue a capital directive is entitled to substantial deference and is therefore committed to agency discretion by law), certiorari denied, --- U.S. ----, 112 S.Ct. 170, 116 L.Ed.2d 134. Unlike the statutory schemes noted above, the Medicare Act does not give unusual deference to the Secretary. It is instead a detailed and meticulous statute that imposes a number of mandatory duties upon the HHS. See Loyola University of Chicago v. Bowen, 905 F.2d 1061, 1067 (7th Cir.1990).
 
 
 27
 We note also that Section 1395oo(g) lists certain findings that are not reviewable "by any court," which suggests that all other findings are reviewable. 42 U.S.C. § 1395oo(g). In addition, referral centers are but one of several types of hospitals that are authorized to receive certain exemptions and adjustments to the PPS. Other hospitals receiving exemptions include sole community hospitals, hospitals extensively involved in cancer treatment and research, hospitals with disproportionate numbers of low-income or Medicare beneficiaries or both, and hospitals in Alaska and Hawaii. 42 U.S.C. § 1395ww(d)(5)(D)-(H). Finally, Congress granted the Secretary a catch-all exception that authorized him to make other exceptions and adjustments as he deems appropriate. 42 U.S.C. § 1395ww(d)(5)(I). This section is clearly discretionary, and implies that the other sections are not totally discretionary.[4]IV.
 
 
 28
 We then proceed to the merits, whether the Secretary's adoption of the referral center regulation is arbitrary, capricious, an abuse of discretion, or contrary to the underlying statute under Section 706 of the APA. The Hospital claims that this Court should not reach this question, noting that the court below did not rely upon it and that it needs to develop a factual record. The district court's discussion of the standing issue, however, includes a finding that "the Secretary's definition of referral centers is both rational and consistent with the Act" (Appellant's App. at 10). Furthermore, a factual record is not necessary to resolve what is largely a legal issue raised by the Hospital. Even if in some circumstances development of facts should be allowed in order to allow a meaningful challenge to a regulation, the facts that the Hospital believes it can show do not strike us as being particularly relevant.
 
 
 29
 The scope of review under the arbitrary and capricious standard is narrow, and this Court is not permitted to supplant its own judgment for that of the agency. St. James Hosp. v. Heckler, 760 F.2d 1460, 1465 (7th Cir.1985), certiorari denied, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 228. Because the statute itself does not define a "referral center," our inquiry is whether the regulation is "rational and consistent with the statute." Sullivan v. Everhart, 494 U.S. 83, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting NLRB v. United Food & Commercial Workers, 484 U.S. 112, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987)). Congress expressed concern for "regional and national referral centers." These words imply large facilities, ones "regional" and "national" in scope. Indeed, one might expect such hospitals to be located in urban areas. The sponsor of the amendment, Senator Bentsen of Texas, in his remarks on the Senate floor cited Houston hospitals as examples of facilities that might be entitled to the exception. Perhaps fearful that the exception would be limited to urban hospitals, Senator Cochran of Mississippi added the parenthetical "including rural hospitals with over 500 beds," citing a hospital in his state he thought also might be entitled to the exception. The statute can easily be read, therefore, as applying only to urban hospitals and rural hospitals with over 500 beds.
 
 
 30
 The Secretary's decision to adopt a regulation that effectively excluded rural hospitals with less than 500 beds is therefore neither arbitrary nor capricious. The Hospital's reliance on several statements in the Congressional Record is misplaced. These remarks were brief, exceedingly general and only purported to describe what a particular Senator thought the characteristics of a referral center might look like--"technologically sophisticated," "high case mix indices," "diverse geographical patient origin," "numerous multidisciplinary medical education programs," and "ability to care for the sickest, most resource-intensive patients." Nothing indicates that the Senators thought these vague criteria had to be adopted in some fashion by the Secretary.
 
 
 31
 More importantly, as noted above, the thrust of the remarks in the Congressional record is that the Secretary was to gather data about these hospitals in order to formulate more meaningful criteria. This is exactly the approach the Secretary took:
 
 
 32
 We stated in the interim final rule that during the second six months of the first transition year, we would analyze all data submitted during the first six months of the first transition year by hospitals seeking referral center status to determine which payment adjustments may be appropriate beginning with the second transition year.
 
 
 33
 Since there is no generally accepted definition of referral centers, it is not possible at this time to determine which payment adjustments are appropriate.
 
 
 34
 49 Fed.Reg. 276. The decision to grant immediate adjustments to rural hospitals with over 500 beds was not discussed in detail in the regulatory comments, but is reasonable given the explicit mention of these types of hospitals in the statute.
 
 
 35
 The Hospital claims it should be given the opportunity to show that no hospital in the country could qualify for subsection (ii) of the regulation, which defines a referral center based on the percentage of referrals it receives and the number of patients outside a local geographical area it treats. Even if this were true, it would hardly matter, since hospitals meeting those criteria would not have been treated differently anyway because adjustments were limited in 1984 for rural hospitals with over 500 beds. The challenged requirements are certainly facially consistent with the statute, and indeed were relaxed in response to criticism of the original proposed rule. See 49 Fed.Reg. 275. The Secretary made it clear that he wanted information from all hospitals seeking referral center status so that he could make a more informed decision the next year. This approach is reasonable and consistent with the statute.
 
 V.
 
 36
 Although the district court erred in concluding that the Hospital did not have standing and that the Secretary's action was committed to his discretion as a matter of law, we affirm the court's judgment on the basis that the regulation being challenged was not arbitrary, capricious or an abuse of discretion because it was consistent with the authorizing statute.
 
 
 
 [1]
 Because of amendments to both the relevant statute and regulation, Knox Hospital has been classified since 1984 as a rural referral center and therefore has received more generous Medicare payments. This case involves the denial of a reimbursement adjustment for fiscal year 1984 only
 
 
 [2]
 The Hospital does not pursue its Fifth Amendment claim on appeal
 
 
 [3]
 See 42 C.F.R. § 412.96 for the current version of this regulation
 
 
 [4]
 The Hospital places much emphasis upon the referral center provision's legislative history, indicating that it provides a meaningful standard upon which to base judicial review. There is in fact little in the scant legislative history to support this conclusion. See 129 Cong.Rec. 5897-5899 (March 17, 1983). Senator Bentsen introduced the provision, noting that "[w]e have a number of hospitals that are national and regional referral centers where we can send patients who require an intensity of resources beyond the capabilities of general community hospitals." Id. at 5898. These hospitals are "characterized by high case mix indices, diverse geographical patient origin, and numerous multidisciplinary medical education programs." Id. Senator Dole added:
 Regional and national referral centers may be quite different from other hospitals. * * * We do not have the data, nor can we perform at this time the analysis needed, to verify that such centers require $10, $100, or $1,000 more per case than other hospitals. * * * [S]ome analysis is necessary and if the results so indicate, adjustments must be made for the special needs of these hospitals. * * * The amendment * * * directs the Secretary to examine the experience of these hospitals carefully and to make the necessary adjustments to their reimbursement to account for their special circumstances.
 Id. Senator Cochran then offered the amendment adding the parenthetical language "including those hospitals of 500 or more beds located in rural areas." Id. The Senator stated that his amendment "will provide for the Secretary to permit payment to these large rural hospitals at the same rate as the urban hospitals if it is found that the cost they incur in delivery of health care justified that level of payment." Id. at 5899. In sum, the legislative history indicates that the Secretary was "directed" only to study the situation and was given considerable discretion when and how to treat referral centers.