**CENTRA HEALTH, INC., d/b/a Lynchburg General Hospital and d/b/a Virginia Baptist Hospital, *et al.*, Plaintiffs,**

v.

**Donna E. SHALALA, Secretary Of Health and Human Services, Defendant.**

**No. CIV.A. 6:99CV00046.**

United States District Court, W.D. Virginia, Lynchburg Division.

June 28, 2000.

Ralph Edwin Burnette, Jr., Edmunds & Williams, Lynchburg, VA, Carol T. Hedlund, Jullian Wilson, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for plaintiffs.

John ·F. Corcoran, U.S. Attorney's Office, Roanoke, VA, Erinn M. Weeks, Dept. of Health and Human Services, Office of General Counsel, Washington, DC, for defendant.

## OPINION

MOON, District Judge.

This case involves a dispute between three hospitals (Centra Health, Inc., d/b/a Lynchburg General Hospital and d/b/a Virginia Baptist Hospital, and Bedford County Memorial Hospital, Inc., d/b/a Carilion Bedford Memorial Hospital) ("Plaintiff Hospitals") located in or near Lynchburg, Virginia and the Secretary of the Department of Health and Human Services ("DHHS") over the alleged failure of the Secretary to reimburse Plaintiff Hospitals amounts due under the Medicare program. Specifically, Plaintiff Hospitals challenge the validity of a hospital wage index established for the Lynchburg, Virginia Metropolitan Statistical Area ("Lynchburg MSA") for federal fiscal year 1997 ("the 1997 Wage Index"). The ·1997 Wage Index was used to calculate a portion of Plaintiff Hospitals' Medicare payments for the cost years in question.

·Plaintiff Hospitals argue that the Secretary erred by including data from an additional hospital, the Central Virginia Training Center ("CVTC") in the 1997 Wage Index for the Lynchburg MSA. Because this Court finds that it was 1) feasible for the Secretary to exclude data from the CVTC and that 2) her inclusion of that data (in light of the feasibility of excluding it) was arbitrary and capricious, it will grant summary judgment to Plaintiff Hospitals.

## I. BACKGROUND

### 1. Introduction to Medicare Program

Congress established the Medicare program in 1965 to provide health insurance

to the aged and disabled. *See* Social Security Act ("Act"), Pub.L. No. 89–97, 79 Stat. 286, 291 (1965) (codified as amended at 42 U.S.C. §§ 1395–1395ccc). The Health Care Financing Administration ("HCFA") is a component of the Department of Health and Human Services responsible for administering the Medicare program.

The Medicare program reimburses hospitals for their inpatient operating costs according to a pre-determined amount per discharge under what is called the Prospective Payment System ("PPS"). *See* Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 65 (1983). Under the PPS, hospitals receive a fixed payment for each Medicare patient regardless of the hospital's actual cost of rendering services to that patient. Thus, the PPS is designed to reimburse hospitals for the costs of treating Medicare patients. To calculate payment amounts under the PPS, the Secretary initially determines a standardized, nationwide "federal rate" which is the nationally-calculated average cost of a typical inpatient stay. *See* 42 U.S.C. § 1395ww(d)(2); *see also County of Los Angeles v. Shalala,* 192 F.3d 1005, 1008 (D.C.Cir.1999). The federal rate consists of two components: (a) the portion of costs that can be attributed to wages and wage-related costs and (b) non-wage related costs.

The Secretary then adjusts the wage-related portion of the federal rate to account for geographic-area differences in hospital wage levels. *See* 42 U.S.C. § 1395ww(d)(5)(E). Each hospital is located in either a Metropolitan Statistical Area ("MSA") or a statewide rural area. *See* 42 U.S.C. § 1395ww(d)(2)(D). The wage index for each M.S.A. § or rural area is based on the ratio of the hospital wage levels in that area compared to the national average wage level, and is derived from the wages and wage-related costs reported by those hospitals in a prior cost year.

The 1997 Wage Index was published in the Federal Register on August 30, 1996. *See* 61 Fed.Reg. 46,166, 46,259 (1996).[1] The data used in creating the wage index includes wages paid by the hospitals and the total number of hours worked by the hospitals' employees. *See id.* The data base from which the 1997 Wage Index was derived included the direct wage costs associated with the PPS portion of the hospital (*i.e.,* short-term, acute care beds), but not the wage costs associated with the non-PPS portions of a hospital (*i.e.,* rehabilitation units and skilled nursing units). However, the data did include *all* wage-related overhead costs, whether the overhead costs related to the PPS portion of the hospital or the non-PPS portions of the hospital. From the cost report data, the Secretary calculated an average hourly wage for all hospitals nationwide, for hospitals in each geographic area, and for each individual hospital. *See id.*

### 2. Application of PPS in the Lynchburg, Virginia MSA

Lynchburg is a small city located at the foot of the Blue Ridge Mountains in south-central Virginia. In 1997, the entire Lynchburg M.S.A. § had an estimated population of approximately 207,245. Because of its relatively small size, the Lynchburg M.S.A. § has three hospitals that are open to the general public and serve the region's population. A fourth hospital, the CVTC, is not open to the general public but instead serves a statewide population of mentally-disabled individuals. The CVTC has 1756 beds, is owned by the state, and operates both an intermediate care facility and a skilled nursing facility. Of the 1756 beds at the CVTC, only 46 are acute care hospital beds (a mere 2.62% of the total number of beds at the facility). Nevertheless, despite there being only 46 acute care beds at a 1756 bed facility, the CVTC only had a

---

**1.** The 1997 Wage Index was effective for discharges occurring on or after October 1, 1996.

24% acute care bed occupancy rate; thus, it has the functional equivalent of eleven PPS-covered hospital beds (46 beds × 24% = 11) in actual use. As a result, CVTC's nonhospital wages are at least twenty times greater than its hospital wages.

Plaintiff Hospitals contend that the 1997 Wage Index is invalid due to the Secretary's refusal to remove data for the CVTC from the data base from which the wage index was calculated. Plaintiff Hospitals argue that the inclusion of the CVTC, which because of its unique structure is the equivalent of 15 to 17 average-sized nursing homes, distorts the Secretary's wage index and violates the statutory requirements that the wage index reflect relative hospital wage levels and exclude data relating to nursing care facilities. The problem is exacerbated due to the relatively small size of the Lynchburg M.S.A. § compared to other, larger MSAs which may more easily absorb atypical data such as that presented by the CVTC. Accordingly, plaintiffs argue that it was feasible for the Secretary to exclude CVTC data and that the Secretary's refusal to exclude CVTC's nonhospital data from the 1997 Lynchburg M.S.A. § Wage Index was arbitrary, capricious, and an abuse of discretion.

## II. ANALYSIS

### 1. Agency Discretion and Judicial Review under the APA

 An initial yet critical question before this Court is the appropriate standard of review to apply. Judicial review of a final decision of the Secretary is governed by 42 U.S.C. § 1395oo(f), which in turn looks to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"); *see also Loyola Univ. of Chicago v. Bowen*, 905 F.2d 1061, 1066 (7th Cir.1990). A presumption for judicial review exists, "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 828, 105

S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Arnow v. U.S. Nuclear Regulatory Comm'n*, 868 F.2d 223, 230 (7th Cir.1989). Judicial review, however, is only barred "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citation omitted).

 The Secretary argues that the Act commits the Secretary's decision to agency discretion. The relevant portion of the Act states:

> The Secretary *shall adjust* the proportion ... of hospitals' costs which are attributable to wages and wage-related costs ... for area differences in hospital wage levels *by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.* ... [T]he Secretary *shall* update the factor under the preceding sentence on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of ... hospitals in the United States. *To the extent determined feasible by the Secretary,* such survey shall measure the earnings and paid hours of employment by occupational category and *shall exclude* data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services....

42 U.S.C. § 1395ww(d)(3)(E) (emphasis added). As the emphasized portions highlight, the Act is a quagmire of both discretionary and mandatory language. Plain language alone, when ambiguous as it is here, is insufficient to allow this Court to determine whether the Secretary's actions were committed to agency discretion by law.

Other, similar sections of the Medicare Act help guide this Court down an otherwise murky and ambiguous path. In *Marshall County Health Care Authority v.*

*Shalala,* 988 F.2d 1221 (D.C.Cir.1993), the United States Court of Appeals for the District of Columbia Circuit analyzed a provision that stated that the Secretary " 'shall provide ... for such other exceptions and adjustments to such [prospective] payment amounts ... as the Secretary deems appropriate.' " *Id.* at 1223, *quoting* 42 U.S.C. § 1395ww(d)(5)(C)(iii). The court noted that "Congress has provided a rather specific norm ... to guide the Secretary's judgment ..." and stated that, "[w]ere the Secretary arbitrarily to grant an exception for some hospitals and not for others identically situated, one could expect a successful challenge." *Id.* at 1224. Finally, the court noted that "the use of the mandatory 'shall' in the statute ... might be thought to add at least some obligation to consider exceptions." *Id.* at 1225 n. 2, *citing Armstrong v. Bush,* 924 F.2d 282, 295–96 (D.C.Cir.1991).

The same provision was analyzed by the Seventh Circuit in *Board of Trustees of Knox County (Ind.) Hospital v. Sullivan,* 965 F.2d 558 (7th Cir.1992), in which the court found the statute's dueling language of "shall provide" and "deems appropriate" to be conflicting and ambiguous. *Id.* at 562. Nevertheless, the Seventh Circuit found that the statute's standard and the structure of the Medicare Act supported judicial review: "[T]he Medicare Act does not give unusual deference to the Secretary. It is instead a detailed and meticulous statute that imposes a number of mandatory duties upon the HHS." *Id.* at 563, *citing Loyola Univ. of Chicago,* 905 F.2d at 1067.

Analyzing *Marshall County* and *Knox County* leads this Court to conclude that the Secretary's decision is subject to judicial review. Facially, the language "[t]o the extent determined feasible by the Secretary" in the Act is much more restrictive than the language "as the Secretary deems appropriate" analyzed in both *Marshall County* and *Knox County.* A scenario can easily be imagined in which the Secretary makes a determination that a given course of action is feasible, yet nonetheless decides not to pursue it because she determines it would be inappropriate to do so. By its very definition, a feasibility determination involves a calculation of the costs and benefits of doing something; whether something is "appropriate" may be determined based on individual judgment.

The structure of the Medicare Act also indicates that the issue involved here is judicially reviewable and therefore is not subject to agency discretion. The Seventh Circuit has noted that the Medicare Act does not give unusual deference to the Secretary. *See Knox County,* 965 F.2d at 563; *Loyola Univ.,* 905 F.2d at 1067; *see also Marshall County,* 988 F.2d at 1224 (D.C. Circuit recognized that the Medicare Act does not provide the "fulsome congressional deference to the executive" in the same manner as the National Security Act). More to the point, Section 1395oo(g) lists specific decisions by the Secretary that are not judicially reviewable; thus, the doctrine of *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another), 73 Am.Jur. Stat. § 211 (1974), dictates that Congress' specific mention of those provisions of the Act which are subject to agency discretion indicates its intent that the remaining provisions of the Act are judicially reviewable.

The Court is confronted with a "battle of underlining," with each side emphasizing the terminology of the statute that best serves its purposes. Viewed as a whole, however, the statute *requires* the Secretary to adjust hospitals' costs to reflect relative hospital wage levels. As part of that mandate, the Secretary is required to exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services. The Secretary may only escape that second requirement if she determines that it is not feasible for her to exclude the nursing facility data. However, the Secretary's feasibility determination is not an automatic ticket to avoid Congressionally-imposed obligations. The mandatory language of

the Act, the structure of the statute, and other courts' interpretations of similar provisions all indicate that the Secretary's determination that it was not feasible to exclude CVTC data is subject to judicial review. Having reached that determination, this Court must next determine whether the Secretary abused her discretion in finding that it was not feasible to exclude nursing facility data such as that involved with the CVTC.

### 2. Feasibility of Excluding CVTC Data

■■ From the outset, it is worth noting that the Secretary has, in the past, excluded CVTC data. In both 1986 and 1996, HCFA excluded CVTC's data in calculating its wage index, noting that "[CVTC] should have been excluded from the wage index survey data base." The Secretary's prior actions give this Court pause on the issue of the feasibility of excluding CVTC data. *See, e.g., Samaritan Health Serv. v. Bowen*, 811 F.2d 1524, 1530 (D.C.Cir.1987); *see also New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854, 861–62 (2d Cir.1992). Less deference is owed to the Secretary's interpretation that is inconsistent with earlier and later pronouncements, because "the [Secretary's] expertise ... to which we normally defer becomes dubious when the expert cannot make up its own mind." *New York City Health and Hosp. Corp.*, 954 F.2d at 861–62. The Secretary's prior exclusion of CVTC data—as recently as 1996—undermines her argument that it is infeasible to exclude it for 1997.

The Secretary's own defense of her inclusion of CVTC data in the 1997 Wage Index also makes it clear that its exclusion is feasible. In response to an inquiry by one of Virginia's United States Senators, the HCFA stated:

> CVTC's situation regarding the wage index is not unique. We identified 24 hospitals currently paid under PPS for which the total excluded area salaries are at least 20 times greater than the total acute inpatient salaries (approximately CVTC's situation). Of these 24 hospitals, 20 have average hourly wages that are lower than their MSA's average hourly wage, and 9 have average hourly wages that are the lowest in their MSAs. Absent a stated policy for excluding the data for these hospitals, we believe that it would distort the relativity of the FY 1997 wage index to exclude CVTC from the Lynchburg MSA's data while including these other hospitals in the data for their respective MSAs.

At the same time as the Secretary argues it is infeasible to exclude this data, she readily identifies 24 hospitals that have disproportionate non-PPS to PPS wages. On the simple issue of feasibility, the Secretary's identification of those hospitals with disproportionate non-PPS wages is evidence that all of the hard work of identifying and locating aberrant hospitals is completed. Once identified, all that would be left to do is simply recalculate the wage index excluding those previously-identified hospitals. A recalculation based on data already in possession of the Secretary is certainly feasible.

Examples of the feasibility of excluding hospitals whose data had a distorting effect abound. *See, e.g.*, 63 Fed.Reg. 25,576, 25,587 (1998) ("The data from the remaining six participating hospitals were removed because inclusion of their data would have significantly distorted the wage index values."); 61 Fed.Reg. 46,166, 46,177 (1996) ("As in past years, we performed an intensive review of the wage data, mostly through the use of edits designed to identify aberrant data."); 50 Fed.Reg. 35,646, 35,646 (1985) ("Hospitals with an aberrant average hourly wage ... are excluded [from the wage index]"). The Secretary has consistently removed from the wage index calculation those hospitals that, for some reason or another, inappropriately skew it. If it is feasible to remove these hospitals from the wage index to prevent distortion, then it is feasible to remove CVTC.

Other courts have held similarly. In *Sarasota Memorial Hospital v. Shalala*, 60 F.3d 1507 (11th Cir.1995), the Eleventh Circuit analyzed whether the Secretary correctly determined that FICA contributions made by one hospital on behalf of its employees were fringe benefits rather than wages for purposes of calculating a wage index for a MSA. The court reversed the Secretary's determination and stated:

Because the Secretary was required to establish a wage index to create a uniform picture of what wage levels were at all provider hospitals in 1982, we hold that the Secretary's exclusion of employee FICA taxes from wages for some hospitals and not others, for purposes of creating the 1982 wage index, was arbitrary and capricious.

*Id.* at 1513. The implication for the case at hand is clear: the Act requires the Secretary to create an index that accurately represents the relative wage levels of hospitals in a given MSA. Including in a relatively small M.S.A. § the equivalent of 15 to 17 nursing homes, which by statute should be excluded from the wage index, does not advance that goal.

Feasibility is synonymous with the narrowly-defined concepts of plausibility and workability. Nevertheless, the Secretary describes the issue here in broad policy terms by arguing that the exclusion of CVTC data would result in the underinclusion of critical data. Under her theory, the CVTC "is not unlike other facilities that do not operate solely as hospitals, but provide other services as well." The argument is thus framed as one of two competing policy choices: either include CVTC's direct hospital wage-related costs and all of its overhead wage-related costs, or exclude CVTC in its entirety, thus excluding its hospital wage-related costs (and, arguably, distorting the wage index since it would then be underinclusive).

While some over- and under-inclusiveness may be acceptable in devising an overall methodology, this situation is one where "rough justice becomes clear injus-

tice." *United States v. Halper*, 490 U.S. 435, 446, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The CVTC accounted for only 2.4% of the Medicare patients treated in the Lynchburg MSA, yet its low-paid, non-hospital wages represented 23% of the total wages in the hospital wage index database for the Lynchburg MSA. Including CVTC's data reduced the 1997 Wage Index for the Lynchburg M.S.A. § from 0.8419 to 0.8052. The consequent effect on Plaintiff Hospitals was a loss of $100.52 per discharge or nearly $1.8 million for all of fiscal year 1997. While there will always be some "winners" and "losers" when statistical funding formulas are used in a proxy manner, the inclusion of CVTC data (in light of the ease of excluding it) exerts such a strong effect on the Lynchburg M.S.A. § that this Court is forced to reverse the Secretary's determination and grant summary judgment to the Plaintiff Hospitals.

This Court is not questioning (and is not in a position to question) the Secretary's policy decision to generally include hospital overhead—regardless of whether it relates to the PPS or the non-PPS portion of a hospital—in her wage index. However, when that policy, as applied, results in a severe distortion of the wage index despite the feasibility, plausibility, and workability of preventing that distortion, then the Secretary's inclusion of the severely distorting data is in error. The Secretary has not adequately explained why she cannot carry out the statute's mandate by utilizing a methodology that generally includes non-hospital overhead, but excludes specific data that drastically distorts an area's hospital wage index. This can be accomplished by excluding the non-PPS portion of CVTC's overhead, by excluding all of CVTC's overhead, or by excluding the CVTC data in its entirety. In any event, the Lynchburg wage index will more accurately reflect the region's hospital wages with little or no effect on the national wage index (and, to the extent the national wage

index would be effected, it would more accurately reflect relevant wages anyway).

### 3. Equal Protection

Plaintiff Hospitals also argue that the Secretary's decision to include CVTC's nonhospital data in the wage index violated their equal protection rights. Since this Court finds for Plaintiff Hospitals on other grounds, it declines to address plaintiffs' equal protection argument.

## III. CONCLUSION

For the reasons explained above, summary judgment will be granted to Plaintiff Hospitals and denied to defendant. The 1997 Wage Index for the Lynchburg M.S.A. § used to compute the plaintiffs' PPS payment rates with respect to payment rates effective with discharges on or after October 1, 1996 is invalid. This case will be remanded to the Secretary to recalculate payment to the plaintiffs by excluding CVTC data in its entirety, by excluding CVTC overhead data, or by excluding CVTC's non-PPS overhead data from the Lynchburg M.S.A. § 1997 Wage Index.

## ORDER

This case involves a dispute between three hospitals (Centra Health, Inc., d/b/a Lynchburg General Hospital and d/b/a Virginia Baptist Hospital, and Bedford County Memorial Hospital, Inc., d/b/a Carilion Bedford Memorial Hospital) ("Plaintiff Hospitals") located in or near Lynchburg, Virginia and the Secretary of the Department of Health and Human Services over the alleged failure of the Secretary to reimburse Plaintiff Hospitals amounts due under the Medicare program.

Both the Plaintiff Hospitals and the Secretary have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth in the attached Opinion, it is hereby ADJUDGED AND ORDERED that summary judgment shall be, and hereby is, GRANTED to Plaintiff Hospitals and DENIED to Defendant Secretary. Pursuant to this Order, the 1997 Wage

Index for the Lynchburg M.S.A. § used to compute the plaintiffs' PPS payment rates with respect to payment rates effective with discharges on or after October 1, 1996 is invalid. This case shall be remanded to the Secretary to recalculate payment to the plaintiffs by excluding Central Virginia Training Center ("CVTC") data in its entirety, by excluding CVTC overhead data, or by excluding CVTC's non-PPS overhead data from the Lynchburg M.S.A. § 1997 Wage Index.

It is so ORDERED. The Clerk of the Court is hereby directed to send a certified copy of this Order and attached Opinion to all counsel of record and to strike the case from the docket.