In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-3460

ADVENTIST GLENOAKS HOSPITAL, et al.,

*Plaintiffs-Appellants,*

*v.*

KATHLEEN SEBELIUS, Secretary,
United States Department of
Health and Human Services,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 5240—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 14, 2011—DECIDED DECEMBER 15, 2011

Before CUDAHY, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* One of the factors affecting the amount of Medicare reimbursement a hospital receives from the Department of Health and Human Services ("HHS") is the average hourly wage of the employees in its geographic region. HHS currently includes paid lunch hours in that calculation. The plaintiffs

here—more than 80 hospitals in Rhode Island, Kentucky, and greater Chicago—object to this practice because some hospitals in their regions give employees paid lunch breaks, which depresses the average area hourly wage and, in turn, their Medicare reimbursements. The Secretary of HHS responds that her agency counts all paid hours, including all paid unworked hours, for the sake of administrative simplicity, a valid and nonarbitrary basis for the decision. The district court granted summary judgment for the Secretary, and the hospitals appealed. Because the Secretary's methodology is not arbitrary or capricious, we affirm.

## I. Background

Medicare is the federal health-insurance program that pays for medical care for the aged and disabled. *See generally* 42 U.S.C. §§ 1395 *et seq.*[1] Medicare Part A, which covers inpatient hospital services and other primary institutional care, reimburses hospitals according to a Prospective Payment System ("PPS"). *See generally id.* § 1395ww(d); 42 C.F.R. § 412, Subparts A through H. The PPS uses a predetermined formula to calculate the amount of reimbursement for each patient discharge without regard to the actual cost incurred. *See generally* 42 U.S.C. § 1395ww(d); 42 C.F.R. § 412,

---

[1] The Secretary administers Medicare through the Centers for Medicare and Medicaid Services, an agency within HHS. For simplicity we refer to HHS's and the Centers' actions as the Secretary's.

Subpart D. Thus, the PPS is designed to encourage hospitals to improve efficiency and reduce operating costs. If a hospital can treat a patient for less than the payment amount, it can keep the savings; if the treatment costs more, the hospital must absorb the loss. *See Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994).

In simplified terms the PPS formula operates as follows: The starting point is a standardized base-payment amount that reflects the average cost per discharge for all inpatient hospital services across the nation. *See* 42 U.S.C. § 1395ww(d)(2)(A)-(D). This amount consists of a labor-related component and a nonlabor component. *See id*. § 1395ww(d)(3)(E)(i); 42 C.F.R. § 412.64(h)(2). The Secretary first multiplies the labor-related component by a hospital's "wage index," a factor designed to account for variations in labor costs across the country. *See* 42 U.S.C. § 1395ww(d)(3)(E)(i); 42 C.F.R. § 412.63(x). She then adds this amount to the nonlabor component. Finally, she multiplies that sum by the weight assigned to the Diagnostic Related Group ("DRG") that best describes the treatment administered for the specific discharge being reimbursed—for example, "heart transplant" or "allergic reaction." *See generally* 42 U.S.C. § 1395ww(d)(2); *see also Methodist Hosp.*, 38 F.3d at 1227 (summarizing the PPS formula).

The dispute here concerns the "wage index" factor in the PPS formula. To assign wage indices to hospitals, the Secretary uses geographic areas called Metropolitan Statistical Areas ("MSAs"), which are developed and

periodically revised by the Office of Management and Budget. *See* 42 C.F.R. §§ 412.63(b), 412.64(b).[2] Hospitals annually report their employees' wages and hours to the Secretary. From these reports the Secretary computes the average hourly wage within each MSA, as well as the national average hourly wage. The wage index for an MSA is the ratio of the MSA's average hourly wage to the national average. For example, if the average hourly wage in an MSA is 20 percent higher than the national average, its wage index is 1.2. Thus, the wages and hours reported by a hospital directly affect the wage index for *all* other hospitals in its MSA. And a higher wage index results in greater reimbursements.

The Secretary requires hospitals to report all "paid hours," including "paid lunch hours[], overtime hours, paid holiday, vacation and sick leave hours, paid time-off hours, and hours associated with severance pay." *See* CENTERS FOR MEDICARE & MEDICAID SERVICES, PROVIDER REIMBURSEMENT MANUAL-PART II, § 3605.2 (2005). The plaintiff hospitals are located in three MSAs: Chicago, Rhode Island, and rural Kentucky. Within these MSAs some hospitals pay their employees for a half-hour lunch

---

[2] Hospitals not located within a designated MSA are classified as "rural" and share a statewide rural wage index. *See* Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates; Final Rule, 69 Fed. Reg. 48,916, 49,026 (Aug. 11, 2004) (codified at 42 C.F.R. pts. 403, 412, et al.). But for our purposes we refer to a state-wide grouping of rural hospitals as an MSA.

break each workday, contrary to common practice.[3] When calculating the average hourly wage in these MSAs, including paid lunch hours results in a larger denominator, and ultimately a lower wage index, than if the lunch hours were not included. The hospitals estimate that the inclusion of lunch hours over federal fiscal years 2003 to 2006 lowered their total Medicare reimbursements by about $20 million.

At various times over those years, many of the hospitals that give paid lunch hours asked the Secretary to remove those hours from the wage-index calculation. Each time, she refused. The hospitals appealed to the Provider Reimbursement Review Board, which held in favor of the Secretary. *See* 42 U.S.C. § 1395oo(a)(1)(A)(ii) (authorizing the Board to review challenges to the Secretary's determination of reimbursement amounts). The hospitals then sought judicial review in the district court. *See id.* § 1395oo(f). The district judge granted the Secretary's motion for summary judgment, holding that substantial evidence supported her decision, which was not arbitrary, capricious, or otherwise unlawful.

---

[3] The Secretary has identified five hospitals that give their employees paid lunch breaks: St. Joseph Health Services, Landmark Medical Center, and The Westerly Hospital in the Rhode Island MSA; T.J. Samson Community Hospital in the rural-Kentucky MSA; and John H. Stroger, Jr. Hospital in the Chicago MSA. The plaintiffs have identified two additional hospitals: Provident Hospital of Cook County and Oak Forest Hospital of Cook County, both in the Chicago MSA.

## II. Discussion

We review the district court's grant of summary judgment de novo. *See Mt. Sinai Hosp. Med. Ctr. v. Shalala*, 196 F.3d 703, 707 (7th Cir. 1999). But our review of the Secretary's decision is very limited. *See* 42 U.S.C. § 1395oo(f)(1) (providing that judicial review is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.). We may overturn the decision only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bd. of Trs. of Knox Cnty. Hosp. v. Shalala*, 135 F.3d 493, 499 (7th Cir. 1998). Among other things a decision is arbitrary and capricious if the agency relies on factors that Congress did not intend it to consider or entirely fails to consider an important aspect of the problem. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This standard of review gives considerable weight to an agency's construction of a statutory scheme it administers. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984).

The hospitals assert that the Secretary's inclusion of paid lunch hours in the wage index violates her statutory mandate. Congress requires the Secretary to

> adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates . . . for area differences in hospital wage levels *by a factor (established by the Secretary) reflecting the relative hospital wage level in*

*the geographic area of the hospital compared to the national average hospital wage level*.

42 U.S.C. § 1395ww(d)(3)(E)(i) (emphasis added). The dispute boils down to whether the Secretary's inclusion of paid lunch hours properly captures "the relative hospital wage level." Notably, the statute provides that the "factor . . . reflecting the relative hospital wage level" shall be "established by the Secretary."

No doubt there are economically sound reasons for excluding paid lunch hours. Suppose MSA A and MSA B are identical in every respect (including their markets), each containing one hospital that employs one kind of employee, who works an eight-hour day (including lunch). If MSA A's hospital pays $10 per hour and treats a half-hour lunch break as paid, and MSA B's hospital pays $10.67 per hour and treats a half-hour lunch break as unpaid, both hospitals will attract an equal supply of employees because either way they earn $80 for doing seven-and-a-half hours of work. But under the Secretary's methodology, MSAs A and B have average hourly wages of $10 and $10.67, respectively. As a result, MSA A has a lower wage index than MSA B. The hospitals claim that this system fails to "reflect[] . . . relative hospital wage level[s]."[4]

---

[4] So why don't hospitals like the one in MSA A just eliminate paid lunch breaks and raise their hourly wages? The hospitals tell us that the "compelled reliance on an archaic county payroll system" prevents them from taking this course. The Secretary,

(continued...)

The Secretary does not challenge the logic of the hospitals' argument.[5] Rather, she argues that the policy of counting all paid hours, including paid unworked hours, serves the important purpose of administrative simplicity. Lunch hours are just one example of paid unworked hours that count towards the wage index. Hospitals must also report paid annual leave, sick leave, holidays, continuing-education time, military-duty leave, jury-duty leave, maternity leave, and bereavement leave. The same economic principles we have just discussed would dictate that none of these hours should enter into the Secretary's calculation; that is, a pure hours-worked system should be used. Yet the hospitals only advocate for the elimination of paid lunch breaks.

Moreover, the Secretary explains that converting to an hours-worked system would raise a host of administrative

---

[4]  (...continued)
however, suggests that the hospitals' unionized employees have collective-bargaining agreements that require compensated meal periods.

[5]  The Secretary briefly questions the hospitals' "assumption that the daily wage at [a] hospital compensating its employees for a meal period would remain the same if the paid meal period were eliminated" and suggests instead that "elimination of the paid meal period could result in a lower daily wage." Not so. In a perfectly competitive market, an employer cannot lower total wages without losing employees. And if the market is instead imperfect and allows for an employer to eliminate paid lunch breaks without losing employees, competitors should be able to lower their wages accordingly.

complications. For example, in 2003 after several hospitals requested exclusions for paid lunch breaks, military-duty leave, or jury-duty leave in the wage index, the Secretary solicited public comment on the issue. *See* Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 45,346, 45,396 (Aug. 1, 2003) (codified at 42 C.F.R. pts. 412, 413). Many commenters opposed changes, explaining that because "most payroll systems do not capture this data," hospitals would have to expend "additional data collection effort [that] . . . might outweigh any benefits achieved through [the] changes." *Id.* Another commenter stated that if paid lunch hours were excluded, other paid breaks should also logically be excluded, but payroll systems typically do not track this time. *Id.* And yet another commenter suggested that only sick leave should be counted in the wage index because it is "consistently offered among hospitals," unlike vacation hours and maternity and bereavement leave. *Id.* at 45,397. In light of the substantial disagreement in the public commentary, the Secretary decided not to adjust the "longstanding policy" of including all paid hours in the wage-index calculation. *Id.*[6]

---

[6] The Secretary points out that even though Congress amends the PPS statutes "frequently," it has never corrected her use of paid hours to calculate the wage index. Thus, she claims that Congress has tacitly endorsed her methodology. Without some evidence that Congress is aware of the issue, we hesitate to agree. *See Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 214 (D.C. Cir. 2011).

Because the paid-hours policy is more readily administrable than alternatives, the Secretary has "consider[ed] an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, and "adequately explained her decision," *Anna Jaques Hosp. v. Sebelius*, 583 F.3d 1, 6 (D.C. Cir. 2009). The all-paid-hours approach is a "reasonable and statutorily permissible"—if not totally accurate—way of measuring relative wage levels. *See Wis. Dep't of Health & Soc. Servs. v. Bowen*, 797 F.2d 391, 397 (7th Cir. 1986). Furthermore, any artificial depression in the hospitals' wage indices ultimately may be ameliorated if hospitals in other MSAs also offer paid lunch breaks or more paid leave in other categories.

The hospitals nevertheless attempt to analogize their case to other instances in which the Secretary has adjusted the wage index. They first point to fictional "hours" that the payroll systems at some hospitals initially tabulate when computing overtime wages or bonus payments. For example, an employee who makes $10 per hour but earns time and a half for overtime might register 1.5 hours of work on the payroll system. Similarly, if that employee receives a $1,000 bonus, the system might log 100 hours of work. The Secretary allows hospitals to remove the fictional half-hour of overtime or the 100 bonus hours from the wage-index data. But these examples are distinguishable because unlike lunch hours and other paid leave, the phantom "hours" associated with overtime and bonus pay do not directly correspond to real periods of time during which an employee does not work yet receives pay.

The hospitals also seek support from *Sarasota Memorial Hospital v. Shalala*, 60 F.3d 1507 (11th Cir. 1995), which concerned a wage-index disparity arising out of Federal Insurance Contributions Act ("FICA") taxes. Ordinarily, employers withhold FICA taxes from employees' gross wages, lowering their take-home pay. *Id.* at 1509. Sarasota Memorial, however, paid FICA taxes on behalf of its employees. *Id*. The Secretary decided to classify Sarasota Memorial's FICA payments as fringe benefits, rather than salary; consequently, the payments did not enter into the numerator when she calculated average hourly wages. *Id*. Sarasota Memorial challenged the Secretary's decision, and the Eleventh Circuit ruled in the hospital's favor.

In *Sarasota Memorial*, however, the Secretary argued unconvincingly that the hospital's payments met HHS's definition of fringe benefits and that "the uniformity of the wage index would be compromised if she were required to determine which, if any, fringe benefits could be reclassified as wages." *Id.* at 1512. Under the HHS definition, a payment must be something "in addition to direct salary or wages" to be considered a fringe benefit. *Id.* But the Secretary failed to explain why the FICA payments were not considered salary or wages in the first place. She relied solely on an FICA statute that "exclude[d] employer-paid employee FICA taxes from the definition of wages *only for purposes of calculating FICA taxes*." *See id.* (citing 26 U.S.C. § 3121(a)(6) (emphasis added)). The court therefore saw "no reasonable basis for classifying the same FICA payments as wages when deducted from an employee's gross pay, but as fringe benefits when paid directly by the employer." *Id.* at 1513.

Here, by contrast, the Secretary has provided a coherent and reasonable justification for her policy of counting all paid hours: It is a bright-line rule that is comparatively easy to administer. It avoids the costs associated with tracking certain kinds of paid unworked time that payroll systems do not record. And it avoids the slippery slope that comes with trying to exclude certain types of paid leave but not others.[7] In sum, the Secretary's justifications for the paid-hours policy are "'rational and consistent with the statute.'" *See Bd. of Trs. of Knox Cnty. Hosp. v. Sullivan*, 965 F.2d 558, 564 (7th

---

[7] The hospitals also cite two district court cases, *Centra Health, Inc. v. Shalala*, 102 F. Supp. 2d 654 (W.D. Va. 2000), and *ViaHealth of Wayne Cnty. v. Johnson*, No. 07-CV-6638T, 2009 WL 995611 (W.D.N.Y. Apr. 14, 2009). We need not discuss the latter because the court vacated its ruling after the parties entered into a settlement agreement. *See ViaHealth v. Johnson*, No. 07-CV-6638T, slip op. at 1 (W.D.N.Y. July 20, 2010). *Centra Health* involved a different provision of the wage-index statute. The directive at issue there provided that "'*[t]o the extent determined feasible by the Secretary*,'" the wage-index calculation "'*shall exclude* data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services.'" *Centra Health*, 102 F. Supp. 2d at 657 (quoting 42 U.S.C. § 1395ww(d)(3)(E)) (emphasis in *Centra Health*). Here, there is no analogous statutory provision *requiring* the Secretary to remove the hours at issue wherever "feasible," nor is there evidence that the inclusion of the hours distorts the hospitals' wage index as drastically as in *Centra Health*. *See id.* at 660.

Cir. 1992) (quoting *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990)).

AFFIRMED.