In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1045

JEFFREY DUBNOW,

*Plaintiff-Appellant,*

*v.*

DENIS R. MCDONOUGH, Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-02423 — **Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 26, 2021 — DECIDED APRIL 1, 2022

Before FLAUM, ST. EVE, and KIRSCH, *Circuit Judges.*

FLAUM, *Circuit Judge.* This tragic case arises from the death of a seven-month-old infant. In 2017, Dr. Jeffrey Dubnow, an emergency room physician at the Captain James A. Lovell Federal Health Care Center (FHCC) in North Chicago, Illinois, was removed from his position as Chief of the Emergency Department because he decided to divert the ambulance transporting the infant to a better-equipped hospital nearby. After the child was pronounced dead upon arriving

at the other hospital, the FHCC—a United States Department of Veterans Affairs (VA) hospital—initiated an investigation into Dubnow's diversion decision. This investigation eventually resulted in his removal. Dubnow appealed this decision to a review board, which concluded that none of the grounds for his removal were supported. The agency's final reviewing authority, however, reversed the review board's decision, finding it to be "clearly contrary to the evidence." Dubnow sought judicial review of this final agency action from the district court, which affirmed the VA's removal decision. Dubnow now appeals the district court's decision.

Because the VA failed to properly apply the deferential "clearly contrary to the evidence" standard when reviewing the board's decision to overturn Dubnow's removal, we hold that the VA's decision was arbitrary and capricious and accordingly vacate the decision and remand this case for further proceedings by the agency.

## I.  Background

### A.  Factual Background

Dubnow is a board-certified emergency medicine physician who has practiced for over forty years. Beginning in October 2011, he served as the Chief of the Emergency Department at the FHCC in North Chicago, Illinois. The FHCC is a joint venture between the VA and the Department of Defense, providing medical services to veterans as well as active-duty members of the military and their families.

Dubnow received positive performance reviews during his tenure at the FHCC until he was removed from his position due to events that took place on April 29, 2017. At around

2:00 PM that afternoon, Joseph Carney, a technician in the Emergency Department, answered a call from the VA Police Dispatch. The dispatcher relayed that an ambulance was en route to the hospital from military base housing with a seven-month-old infant in full cardiorespiratory arrest. Carney spoke only to the dispatcher and was unable to communicate directly with the ambulance crew treating the child.

Carney conferred with Dubnow and another physician on duty, Dr. James Martin. Based on the limited information Carney relayed, Dubnow concluded that the most likely cause of the infant's arrest was trauma. Concluding that the FHCC's Emergency Department was ill-equipped to handle pediatric trauma cases, Dubnow told Carney to direct the ambulance to nearby Lake Forest Hospital instead. Lake Forest Hospital, located a few minutes away from the FHCC, has a Level-II trauma center and is staffed with pediatric specialists. Carney relayed Dubnow's instruction that the ambulance proceed directly to Lake Forest Hospital, but moments later (and as soon as the call had ended), noticed on a video monitor that the ambulance had already arrived at the FHCC's ambulance bay. Seeing this, Dubnow and his staff prepared to receive and treat the child. The ambulance crew, however, had already received Dubnow's relayed instructions and immediately departed for Lake Forest Hospital, leaving the FHCC without any way for its staff to re-initiate communications. The child was unable to be resuscitated en route or at Lake Forest Hospital and was pronounced dead at 2:46 PM.

### B. Procedural Background

Following the above-recounted incident, the VA initiated an investigation by an Administrative Investigative Board (AIB). As a result of this investigation, the FHCC's Director,

Dr. Stephen Holt, terminated Dubnow, effective December 24, 2017. Five "charges" (three of which related to the incident on April 29, 2017, and two of which related to other conduct) constituted the basis of the termination decision.

Dubnow properly appealed his removal under 38 U.S.C. § 7461(b)(1), and the VA's Deputy Under Secretary for Health for Operations and Management appointed a Disciplinary Appeals Board (DAB) comprised of three senior VA physicians to consider the appeal, *see* 38 U.S.C. § 7464(a). The DAB conducted a three-day hearing during which it heard testimony from thirteen witnesses. At the conclusion of the hearing, the DAB issued a written decision finding that none of the five charges against Dubnow were supported and recommending that Dubnow's removal be overturned.

In its decision, the DAB discussed a number of reasons for its finding that the AIB's decision was unsupported: that Lake Forest Hospital was only a few minutes away; that the ambulance crew was capable of providing the appropriate immediate care for resuscitation during transport; that the AIB's investigation forming the basis of the removal decision was defective in that it did not include interviews of or testimony from key witnesses to the April 29 events (including Dr. Martin, Carney, or the ambulance crew); that the nature of the communications between the Emergency Department staff and the ambulance crew was "not conducive" to a meaningful discussion of the patient's state; that Dubnow's intent was to transport the infant to the best facility as quickly as possible; that the decision to divert the ambulance met the community standard of care; that there was no information the ambulance crew could have provided the Emergency Department staff that would change the conclusion that Lake Forest

Hospital was better equipped to treat the child; and that although the FHCC had equipment and staff that could have treated the patient, none of them were "battle-tested" as there had been no pediatric cases requiring advanced life support of any kind since Dubnow began his tenure there nearly six years earlier.

The DAB sent its findings to Steven Lieberman, the VA's Principal Deputy Under Secretary of Health (PDUSH) and the agency's final reviewing authority. *See* 38 U.S.C. § 7462(d)(4). The PDUSH remanded the case to the DAB, requesting further explanations as to why "diversion of the patient was acceptable, focusing on the fact that a fully trained, Board Certified ER physician should have been able to provide care to an infant," and why it was acceptable for Dubnow to conclude that the child's cardiac arrest was related to trauma without any hands-on assessment of the child. The DAB addressed these requests and provided further analysis, but it did not alter its conclusions that none of the charges should be sustained and that removal was unwarranted.

Pursuant to his authority under 38 U.S.C. § 7462(d)(2), the PDUSH reversed the DAB's decision only on Charge One ("Inappropriate Refusal of Care and/or Diversion"), finding it to be "clearly contrary to the evidence." The entirety of the PDUSH's explanation reads:

> The [FHCC] not only serves Veterans but also family members housed at the military base. As such, the FHCC is staffed and equipped to handle pediatric cases, and equipment necessary to handle a pediatric resuscitation was available. Additionally, [Dubnow] and other staff

> members on duty that day were Pediatric Advanced Life Support (PALS) certified, and as such, there was no need to divert the ambulance to another facility. The evidence shows [Dubnow's] decision to divert the ambulance was not justified, and created a serious situation that negatively impacted patient care.… I find the egregiousness of the conduct as described in Charge One justifies the penalty of removal given the circumstances of this case.

Accordingly, the PDUSH reinstated Dubnow's removal, now based solely on Charge One.

Dubnow sought review of the PDUSH's decision in the Northern District of Illinois, challenging it as arbitrary and capricious, an abuse of discretion, not in accordance with the law, unsupported by substantial evidence, and not conducted according to the required procedures. The court affirmed the VA's decision, essentially because it found there to be an articulated, rational basis for it, which, the court held, sufficed under an arbitrary and capricious standard of review.

Because the PDUSH rejected only the DAB's findings as to Charge One (diversion of the ambulance), that is the only charge at issue on appeal. Before this Court, Dubnow now argues that the PDUSH's decision was arbitrary and capricious because it did not properly apply the "clearly contrary to the evidence" standard and because it did not evaluate his conduct against the community standard of medical care.

## II.    Discussion

Because the PDUSH's decision was the final decision of the VA in this action, we review that decision directly, with no deference to the district court's assessment. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). When reviewing the PDUSH's decision, we must reverse if we find it to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2).

Importantly, the PDUSH himself was required by statute to take a deferential posture in his review of the DAB's decision. The PDUSH is only permitted to reverse the DAB's decision if he finds it to be "clearly contrary to the evidence or unlawful." 38 U.S.C. § 7462(d)(2). Accordingly, the question before us invokes a layered standard of review: Was the PDUSH's decision (that the DAB's decision was clearly contrary to the evidence) arbitrary and capricious or unsupported by substantial evidence?[1]

In urging us to answer in the affirmative, Dubnow advances two arguments. First, he argues that the PDUSH failed to apply the deferential "clearly contrary to the evidence" standard as required by statute. Second, he argues that the PDUSH's decision is deficient because it failed to evaluate his conduct against the appropriate community standard of medical care, which Dubnow claims is necessary when

---

[1] Before this Court, Dubnow has not contended that the PDUSH did not follow "procedures required by law, rule, or regulation." *See* 38 U.S.C. § 7462(f)(2)(B).

considering whether "a major adverse action" (here, his termination) is appropriate when it involves a "question of professional conduct or competence" (here, the diversion decision). *See* 38 U.S.C. § 7462(a). The VA disagrees with both of these arguments, of course, but also contends that Dubnow forfeited them by failing to raise them at the district court. We address the forfeiture question first, before turning to the merits of whether the PDUSH's decision was arbitrary and capricious.

### A. Forfeiture

The VA argues that, as a preliminary matter, Dubnow waived both of his arguments on appeal because he failed to argue them at the district court. Because waiver is the "intentional relinquishment of a known right," what the VA really argues is that Dubnow has unintentionally forfeited these arguments. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 847–48 (7th Cir. 2005) (discussing the difference between waiver and forfeiture). Terminology aside, we may dispose of this argument expeditiously.

Dubnow discussed the PDUSH's failure to apply the "clearly contrary to the evidence" standard throughout his opening brief at the district court. Indeed, this appears to have been the thrust of his entire argument at the district court, and, thus, we conclude that Dubnow has not forfeited it on appeal.

Dubnow also raised his argument about the community standard of medical care in his opening brief at the district court, albeit far less thoroughly than his "clearly contrary to the evidence" argument. Furthermore, as argued, the PDUSH's failure to examine whether Dubnow's conduct met

the community standard of care is really, at bottom, just an example Dubnow highlights in order to prove that the PDUSH failed to properly scrutinize whether the DAB's decision was clearly contrary to the evidence—an argument that, again, he undoubtedly preserved. For these reasons, we conclude that Dubnow has not forfeited either argument.

## B. Was the PDUSH's Decision Arbitrary and Capricious or Unsupported by Substantial Evidence?

### 1. *Standard of Review*

As discussed above, this case presents a knotty question due to the layered standards of review. We must decide whether it was arbitrary and capricious for the PDUSH to find that the DAB's decision was clearly contrary to the evidence. We review this question de novo, giving no deference to the district court's decision. *See Minnick*, 775 F.3d at 935.

The first layer of review, under the arbitrary and capricious standard, is a familiar one. This standard has been described in many ways, but in all articulations it is deferential. Under it, we will disturb an agency's determination only if it lacks a "rational basis." *White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 474 (7th Cir. 2009); *see also Doran v. Wilkie*, 768 F. App'x 340, 349 n.6 (6th Cir. 2019) ("[T]he arbitrary-and-capricious standard of 38 U.S.C. § 7462(f) … mirrors the standard of review of administrative actions under the Administrative Procedure Act" (citing 5 U.S.C. § 706(2))). Only if the agency relied on factors that Congress did not intend it to consider, failed to consider an important aspect of the problem, or failed to articulate a satisfactory connection between the facts found and the choice made will we find the agency's action invalid. *Sierra Club v. U.S. Env't Prot. Agency*, 774 F.3d 383, 393

(7th Cir. 2014); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We do not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the [agency]." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (per curiam)). Still, the agency must provide a "logical bridge" between the evidence and its conclusion. *See Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)); *see also State Farm*, 463 U.S. at 43 (noting that an agency "decision of less than ideal clarity" will be upheld "if the agency's path may reasonably be discerned" (citation omitted)).

On the other hand, the second standard of review layer—the "clearly contrary to the evidence" standard that the PDUSH was required to employ in reviewing the DAB's decision—is far less familiar. In fact, the parties point to only one case that interprets the standard in this context, and the Court's own efforts to find other cases have proven fruitless. Because we find it to be well-reasoned, we adopt the interpretation proposed by the only court to have taken up this question.

In *Savu v. United States*, the district court took a plain language approach in interpreting this standard: "Given their plain and ordinary meanings, 'clearly' means 'without doubt; obviously.' And 'contrary to the evidence' means 'conflicting with the weight of the evidence presented at a contested hearing.'" No. SA-18-CV-00993-JKP-ESC, 2021 WL 1615562, at *2 (W.D. Tex. Apr. 26, 2021) (quoting *Clearly*, Oxford Dictionaries, https://premium.oxforddictionaries.com/us/definition/american_english/clearly (last visited Mar. 25, 2022); *Contrary*

*to the Evidence*, Black's Law Dictionary (11th ed. 2019)). Combining the plain meanings of these two phrases, the *Savu* court ruled that the PDUSH could reverse the DAB's decision as "clearly contrary to the evidence" only if the PDUSH showed that it would be obvious to an ordinary person that the DAB's decision conflicted with the weight of the evidence. *Id.* We see no reason to depart from this straightforward approach here and therefore analyze the PDUSH's decision using this articulation of the "clearly contrary to the evidence" standard.

Layering these two standards on top of one another, we will vacate the PDUSH's decision if it did not articulate some rational basis for why the DAB's decision obviously conflicted with the weight of the evidence.

> 2. *The PDUSH's Failure to Apply the "Clearly Contrary to the Evidence" Standard*

Dubnow argues that the PDUSH's decision was arbitrary and capricious because it reflects a failure to give proper deference to the DAB's decision under the required "clearly contrary to the evidence" standard. We agree for two reasons.

First, the PDUSH's decision indicates that he failed to evaluate the question posed to him and thereby "fail[ed] to consider an important aspect of the problem." *Adventist GlenOaks Hosp. v. Sebelius*, 663 F.3d 939, 942 (7th Cir. 2011).

The allegation in Charge One in its entirety reads as follows:

> Inappropriate Refusal of Care and/or Diversion. Specification: On or about April 29, 2017, at approximately 2:01 p.m., you inappropriately refused care to and/or diverted a seven-month old

[sic] infant in full cardiac arrest en route via am-
bulance to the [FHCC ED] to Lake Forest Hos-
pital[,] which delayed potentially life-saving
treatment. The infant was pronounced dead at
2:46 p.m. at Lake Forest Hospital.

In his four-sentence description of his findings, the
PDUSH's conclusion appears to rest on his finding that "there
was no need to divert the ambulance to another facility." But
whether there was a need to divert the ambulance is not at all
the question the PDUSH, or even the DAB, was required to
answer. The relevant question for the DAB was whether the
diversion was appropriate; if so, Dubnow's removal could not
be sustained. But to conclude, as the PDUSH did, that treating
the patient at the hospital was possible, or even appropriate,
is not to conclude that diverting the ambulance to a better-
equipped hospital would have been *in*appropriate. And,
moreover, this is not the question the *PDUSH* was tasked with
answering. Rather, the PDUSH was tasked with deciding
whether the DAB's conclusion on that question was clearly
contrary to the evidence. As such, the PDUSH's conclusion
that there was "no need" to divert the patient is two steps re-
moved from the analysis Congress tasked him with perform-
ing under 38 U.S.C. § 7462(d).

More generally, even if we could conclude that the
PDUSH found that diversion was inappropriate, the PDUSH
appears to have substituted his judgment for the DAB's, in
explicit violation of the statute. In fact, the VA itself says as
much, writing in its brief, "The charge was that Dubnow's di-
version of the ambulance was inappropriate; the Board found
that it was not, and the PDUSH found that it was." But, again,
this is insufficient for the PDUSH to overturn the DAB's

conclusion. In order to overturn the DAB's conclusion, the statute requires that the PDUSH find not only that diversion was inappropriate but also that any conclusion by the DAB to the contrary would appear to the ordinary person to be obviously against the weight of the evidence. Because it is entirely devoid of a discussion of the DAB's numerous, detailed findings, the PDUSH's opinion contains no rational basis for such a sweeping conclusion.

The VA argues that the PDUSH did answer the appropriate question under the relevant standard because his opinion letter stated, "Upon careful consideration of the facts of the case, I do not concur with the Board's findings regarding Charge One as it is clearly contrary to the evidence," and also cited the standard multiple times elsewhere. But "[m]erely parroting the standard without showing its application renders review of a DAB decision arbitrary and capricious." *Savu*, 2021 WL 1615562, at *6. The PDUSH failed to grapple *at all* with any of the reasons the DAB advanced for overturning the charge against Dubnow.

The PDUSH need not mention or analyze every piece of evidence in the record. *Cf. Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (per curiam) (noting that, in determining social security disability benefits, administrative law judges need not examine and discuss every piece of evidence). But when Congress explicitly directs that a DAB's decision may only be reversed upon a finding that it was clearly contrary to the evidence, any such reversal should contain some analysis constructing a "logical bridge" between the evidence and the conclusion that the DAB's finding was obviously against the weight of that evidence. *See Kastner*, 697 F.3d at 646. Merely listing a few reasons that support the conclusion opposite the

DAB's, without any discussion of the evidence relied on by the DAB, is not enough to meet this minimal bar. Accordingly, we conclude that the PDUSH's decision in this action was arbitrary and capricious.

### 3.  *The PDUSH's Failure to Evaluate Dubnow's Conduct Against the Community Standard of Care*

Dubnow also argues that the PDUSH's failure to evaluate his decisions on April 29, 2017, against the community standard of care provides an independent reason to vacate the PDUSH's decision. We decline to create such a broad rule stating that any failure by the PDUSH to evaluate a physician's conduct against the community standard of care renders the PDUSH's decision arbitrary and capricious. While one would expect that an analysis of the physician's conduct against the community standard of care would play a part (and perhaps even a substantial part) in the PDUSH's decision in a case such as this, which asks whether the physician's conduct was "inappropriate," we decline to establish a rule that any decision lacking such an analysis is *per se* deficient.

Instead, we interpret this argument as simply putting forth another example of how the PDUSH failed to provide a rational basis for his decision. The DAB concluded that "[t]he community standard of care was met for the patient by the decision to redirect the ambulance," and this conclusion appears to have played a predominant role in the DAB's ultimate conclusion that Dubnow's actions were not inappropriate. Because the PDUSH was tasked with evaluating whether the DAB's findings were clearly contrary to the evidence, one would expect to see some discussion in the PDUSH's opinion of the DAB's rather significant conclusion on this point. The

total absence of any such discussion suggests that the PDUSH misunderstood his role as a deferential reviewer of the DAB's findings.

To be sure, the evidence as to whether Dubnow's actions met the community standard of care is, contrary to Dubnow's assertions, mixed. For example, while the DAB did conclude that Dubnow met the standard of care, Dr. Holt (the Director of the FHCC) testified to the DAB: "We have all the equipment. We have the nursing staff trained to do this. We had the room available. Help me here. I don't understand how we're not capable of doing pediatric emergencies." In sum, a review by the PDUSH of the evidence regarding whether Dubnow met the standard of care may very well reveal that the DAB's finding on the issue was clearly contrary to the evidence. But this does not excuse the PDUSH from meaningfully analyzing the evidence to determine whether this is, in fact, the case.

### III.    Conclusion

For the reasons explained above, we REVERSE the district court's decision affirming the VA's decision, VACATE the VA's decision, and REMAND the action back to the VA for further proceedings in accordance with this opinion.