In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 25-1004

JOHN PETERSON,

*Plaintiff-Appellant,*

*v.*

DOUGLAS A. COLLINS, Secretary of Veterans Affairs, and DEPARTMENT OF VETERANS AFFAIRS,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:21-cv-02293 — **Colin S. Bruce,** *Judge.*

———————————

ARGUED SEPTEMBER 17, 2025 — DECIDED MARCH 13, 2026

———————————

Before SCUDDER, PRYOR, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Dr. John Peterson was employed as a pain-management physician at the Veterans Administration Illiana Health Care System ("VAIHCS") in Danville, Illinois. After concerns arose in 2020 regarding his standard of care, he was placed on summary suspension and ultimately removed from his position. He appealed the removal through the Veterans Administration Disciplinary Appeals Board,

which denied his appeal. Peterson then filed this action in federal court, seeking judicial review of the Appeals Board's final decision and claiming he was subject to procedures that were arbitrary and capricious and violated his Fifth Amendment right to due process. Finding otherwise, the district court affirmed the Appeals Board's ruling and dismissed the action.

On appeal, Peterson maintains that the Appeals Board followed arbitrary procedures and that he was denied his due process rights to contest his removal. But the record shows otherwise: Peterson was given advance notice, multiple opportunities to be heard and submit evidence, and months to prepare for his hearing before the Appeals Board. Because Peterson provides no basis for concluding that these procedures were inadequate, we affirm.

## I. Background

Peterson began his employment as a pain-management physician at VAIHCS in 2016. In early 2020, however, VAIHCS placed Peterson on summary suspension due to concerns that his practice "d[id] not meet the accepted standards of practice and potentially constitute[d] an imminent threat to patient welfare." The suspension letter—dated January 17, 2020, and signed by the VAIHCS Director—informed Peterson that his suspension was effective immediately and that a comprehensive review of his treatments was underway. The letter advised Peterson of his right to provide information regarding the cited concerns within fourteen days, but he did not do so. Though the letter stated that the comprehensive review would be completed within thirty days, VAIHCS granted itself multiple thirty-day extensions due to the COVID-19 pandemic and to comply with its internal policies. It ultimately completed the review on September 14, 2020.

The next day, the Acting Chief of Staff of VAIHCS, Dr. Gerson Teran, prepared a memorandum balancing the aggravating and mitigating factors of the allegations against Peterson, which arose from his alleged mismanagement of patients' opioid and benzodiazepine prescriptions. Teran's memo ultimately proposed that Peterson be removed from duty. On September 17, the Clinical Executive Board at VAIHCS convened and recommended to the VAIHCS Director that Peterson be removed.

Peterson received formal notice that the Clinical Executive Board had recommended his removal and the permanent revocation of his clinical privileges on October 13, 2020. The "Proposed Removal" described the charges against him: one charge of "failure to provide appropriate medical care," supported by twenty-one instances of conduct falling below the standard of care, and one charge of "failure to follow instruction," for an alleged incident in which Peterson interacted with a patient while on suspension. It further advised Peterson of his rights to attorney representation, to review evidence, and to reply to the charges within seven days. The evidence on which the decision was based, or "evidence file," was attached to the Proposed Removal. The Proposed Removal was signed by VAIHCS's Specialty Service Chief.

Peterson's attorney requested ninety days to review the charges and prepare a response, but VAIHCS—required by statute to issue a final decision within fifteen days of the Proposed Removal—denied the request. Peterson filed no written reply to the charges and, on November 4, received a Removal Decision letter adopting the Proposed Removal.

Peterson appealed his removal to the Appeals Board, and a hearing was scheduled for January 6, 2021. Peterson

immediately submitted a waiver of the Appeals Board's stat-
utory deadline to render a decision, indicating he would need
more time to prepare, and the Appeals Board moved the hear-
ing to February 24. The Appeals Board also granted Peter-
son's request to call an expert witness but denied his request
for discovery of VAIHCS internal documents. Peterson then
requested, and was granted, two further postponements of
the hearing date after claiming difficulty in finding an expert.
The Appeals Board's grant of Peterson's second request set
June 2 as the new hearing date and May 17 as the deadline to
name an expert but kept March 8 as the deadline for Peterson
to submit other motions and non-expert exhibits. Though the
record is unclear, Peterson appears to have identified his ex-
pert on May 17, and requested for the hearing to be pushed
back, for the third time, to June 30. But the Appeals Board de-
nied this request, noting the three prior extensions and con-
cluding "[t]here is time for the expert witness … to review the
evidence file prior to the hearing."

For reasons that remain opaque, Peterson's expert was un-
able to review the evidence file and prepare a report in time
for the June 2 hearing. In lieu of an expert report, Peterson
himself prepared a 154-page Rebuttal responding to each of
the Proposed Removal's specifications. Peterson's Rebuttal
was submitted to the Appeals Board at 7:30 PM on June 1—
the night before his hearing was scheduled to take place.

At the hearing, Peterson moved to enter the Rebuttal as an
exhibit, but the Appeals Board denied his request, noting an
objection from the agency—the Department of Veterans Af-
fairs was defending VAIHCS's decision before the Appeals
Board—that the timing of Peterson's submission gave it no
time to review the document prior to the hearing. Peterson

instead attempted to read from the Rebuttal during questioning by his attorney. The agency's attorney objected again, and the Appeals Board instructed Peterson that he could refer to the evidence file and his notes (including the Rebuttal), but he could not read directly from the document. Peterson then refused to answer any further questions from his attorney. Members of the Appeals Board, wanting more testimony from Peterson, then questioned him directly, allowing him thirty seconds per question to review the evidence file and the Rebuttal before answering.

The Appeals Board issued its decision on July 15, sustaining both charges against Peterson, with an accompanying report detailing the Appeals Board's findings sustaining ten out of the twenty-one "failure to provide adequate care" allegations, plus the one "failure to follow instruction" allegation. The Appeals Board also sustained the penalty of removal and revocation, noting briefly that "the sustained charges are serious" and that it had reviewed VAIHCS's discussion of aggravating and mitigating factors.

The report also discussed the procedures used in reaching its decision. It noted one procedural error—the Proposed Removal was signed by the VAIHCS Chief of Specialty Service rather than the Acting Chief of Staff, as required by the Veterans Health Administration Handbook ("Handbook"). But it concluded the error was harmless, as the Acting Chief of Staff had been part of the Clinical Executive Board that voted on Peterson's removal. The report then explained the Appeals Board's decision to exclude the Rebuttal from evidence, noting that by the time Peterson submitted it, the deadline to submit evidence had long passed and the agency lacked advance opportunity to review the document. The report concluded

that "the [Appeals Board] gave [Peterson] ample opportunity to prepare for the hearing and respond to the charges." On October 12, 2021, the Deputy to the VA Undersecretary for Health approved the Appeals Board's decision to remove Peterson; this marked the agency's final decision on Peterson's appeal.

Peterson then filed suit against the Secretary of Veterans Affairs and the Department of Veterans Affairs. He argued that the Appeals Board's decision to exclude his Rebuttal, its weighing of aggravating and mitigating factors, and various procedures taken in tension with the Handbook were arbitrary and capricious and violated due process. Peterson then moved "in support of complaint for judicial review," effectively a motion for summary judgment, and defendants cross-moved for summary judgment in opposition.

The district court granted the defendants' motion, affirming the Appeals Board's decision. The court found (1) the Appeals Board's exclusion of the Rebuttal justified in light of the document's untimeliness and the opportunities Peterson had been afforded to refer to it when providing testimony; (2) the Appeals Board's consideration of aggravating and mitigating factors sufficient—if only "barely"—since the Appeals Board had cited at least one aggravating factor (the seriousness of charges) and noted the more thorough analyses performed by VAIHCS prior to the Appeals Board's review; (3) Peterson failed to demonstrate that any harm resulted from the agency's diversions from the letter of the Handbook, finding his arguments either undeveloped or unpersuasive; and (4) the Appeals Board's procedures gave Peterson adequate due process, noting that he had been represented by counsel, permitted to retain an expert, and afforded multiple extensions.

## II. Discussion

A physician employed by the VA can challenge a major adverse action, such as a suspension or discharge, under 38 U.S.C. § 7462. The statute allows employees to seek judicial review and overturn a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7462(f)(2)(A). "Arbitrary and capricious" is a deferential standard when reviewing agency action; "[u]nder it, we will disturb an agency's determination only if it lacks a 'rational basis.'" *Dubnow v. McDonough*, 30 F.4th 603, 610 (7th Cir. 2022) (quoting *White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 474 (7th Cir. 2009)). On appeal, Peterson presents the same arguments for review under § 7462(f)(2)(A) that he pursued below. We review those challenges anew without deferring to the district court's assessment. *Id.* at 609.

### A. Exclusion of the Rebuttal

The Appeals Board's exclusion of Peterson's Rebuttal was neither arbitrary nor capricious. It is undisputed that the Appeals Board communicated the deadlines for submitting exhibits into the record and granted three extensions for Peterson to obtain an expert. But Peterson failed to meet these deadlines, and instead—despite having over six months between his effective removal and his hearing before the Appeals Board—submitted his own 154-page Rebuttal the evening before the hearing. In both the hearing and its later report, the Appeals Board explained that this timing gave the agency no time to review the voluminous Rebuttal before the hearing, preventing it from being included in the evidence file. This reasoned application of the Appeals Board's procedural rules satisfies the obligation to provide a "rational basis" for its

decision. *Id.* at 610; *see also Settling Devotional Claimants v. Copyright Royalty*, 797 F.3d 1106, 1122 (D.C. Cir. 2015) (holding that administrative tribunal "reasonably declined to consider … methodological evidence given its untimely presentation").

Moreover, while the Appeals Board ruled that Peterson could not circumvent its evidentiary ruling by simply reading the Rebuttal into the record, it allowed him to consult the document and any other notes (including the evidence file) when answering questions. Peterson contends that this arrangement "severely restricted" his ability to use the Rebuttal at the hearing but makes no attempt to explain how or why.

Instead, Peterson cites to *Doe v. Lieberman,* another physician-removal case in which a district court held that the Appeals Board had acted arbitrarily and capriciously by excluding "arguably relevant" evidence and "fail[ing] to give any reason justifying the exclusion." 2021 WL 4476748, at *8 (D.D.C. Sept. 30, 2021). But we do not find *Doe* persuasive here. For one, unlike the plaintiff in *Doe*, Peterson has not explained what made the Rebuttal even "arguably relevant" to the proceedings, or even if it included evidence that was not already contained in the file. But more importantly, unlike in *Doe*, the Appeals Board did give Peterson a reasoned basis for its exclusion. That is all that is required under the arbitrary-and-capricious standard, whatever the decision's effect may be. *See Dubnow*, 30 F.4th at 610.

It is also worth noting that the Appeals Board is just that: an *appellate* body. The Appeals Board hearing was neither Peterson's first chance to submit evidence, nor an unfettered opportunity to expand the evidentiary record. By applying an

even-handed and clearly communicated deadline, the Appeals Board acted well within its bounds as an appellate body.

### B. Aggravating and Mitigating Factors

We turn next to Peterson's challenge to the Appeals Board's analysis of aggravating and mitigating factors supporting the harsh penalty of removal and revocation. Peterson argues that the Appeals Board's decision was deficient because it failed to consider the twelve factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981). Those factors include "[t]he nature and seriousness of the offense … [in] relation to the employee's duties, position, and responsibilities," "the employee's past disciplinary record," "[the] consistency of the penalty with those imposed upon other employees," and "the adequacy and effectiveness of alternative sanctions to deter such conduct," among others. *Douglas*, 5 M.S.P.B. at 332.

We have yet to decide whether the *Douglas* factors are binding on the Appeals Board. But even assuming they were, a thorough accounting of the *Douglas* factors was conducted in Peterson's case. Prior to Peterson's Proposed Removal, Teran's September 2020 memo walked through each of the twelve *Douglas* factors in justifying the proposal that Peterson be removed from employment. The Proposed Removal and the Removal Decision also contained abridged discussions of *Douglas* factors, focusing on the seriousness of the offense, Peterson's responsibilities as a seasoned provider in regular contact with patients, and lack of rehabilitation potential.

As the district court observed, the Appeals Board's formal consideration of aggravating and mitigating factors was less substantive. The Appeals Board's report noted only the

seriousness of the offense in upholding the penalty of removal and revocation and noted no potentially mitigating factors. The Appeals Board did, however, refer to the discussions of aggravating and mitigating factors in the Removal Decision, Proposed Removal Order, and Teran's memo. And under the arbitrary-and-capricious standard, we are to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted). Here, the Appeals Board's reference to the fulsome analysis of the *Douglas* factors in the preceding documents provides a discernible path the agency took to upholding the penalty against Peterson. We thus conclude that the Appeals Board's analysis of aggravating and mitigating factors in reviewing Peterson's penalty was sufficient.

## C.  Violations of the Handbook

Apart from his challenges to the Appeals Board's procedures and reasoning, Peterson also argues that VAIHCS acted arbitrarily and capriciously by violating various provisions of the Handbook in the course of his removal proceeding. These purported violations include: (1) failing to complete a comprehensive review of his charges within thirty days of his suspension, (2) failure of the Chief of Staff or Acting Chief of Staff to sign his removal letter, and (3) not providing Peterson with a complete copy of all evidence upon which the charges were based. But Peterson has failed to either identify a genuine violation of the Handbook or develop a theory of how he was harmed by these purported violations.

Starting with Peterson's assertion of improper delay: section 1100.19 of the Handbook does state that, following a summary suspension, "the comprehensive review… should be

accomplished within 30 calendar days." But the Handbook also provides an exception to this deadline "where the comprehensive review cannot be accomplished in 30 days," requiring only that "the circumstances should be documented with an expectation of when the comprehensive review will be completed." Here, while VAIHCS did not complete its review within the initial thirty-day timeframe, it sent letters to Peterson each month explaining the reasons for the delay (generally, due to COVID-19) and setting a new deadline within thirty days. Peterson makes no argument that VAIHCS was required to do more under section 1100.19.

Peterson's other claims about violations of the Handbook are undeveloped. He maintains that the Proposed Removal was arbitrary and capricious because it was signed by the Chief of Specialty Service, not the Chief or Acting Chief of Staff as required by the Handbook. But as the Appeals Board observed, the Acting Chief of Staff (Teran) was involved with the removal process and officially voted to remove Peterson from his position. Thus, whatever procedural error VAIHCS committed in having the Chief of Specialty Service sign the Proposed Removal was harmless. *See Zero Zone, Inc. v. United States Dep't of Energy*, 832 F.3d 654 (7th Cir. 2016) ("[W]e will not invalidate an agency decision based on procedural error unless the errors alleged could have affected the outcome." (quotation omitted)); *Doran v. Wilkie*, 768 F. App'x 340, 354 (6th Cir. 2019) ("[O]ur review of administrative agency decisions is subject to harmless-error analysis[.]").

Finally, Peterson briefly argues that he failed to receive a complete copy of all the evidence against him, as required by the Handbook. But the Proposed Removal included the evidence file that VAIHCS relied upon in making the charges

against him, and even Peterson's complaint states that he received this evidence file—containing over 2,000 pages—in November 2020. While Peterson faults VAIHCS for omitting evidence covering "the entire term of [his] treatment of some patients," he does not identify any specific evidence that he believes VAIHCS relied on but did not attach to the Proposed Removal.

### D.  Due Process

Alternatively, Peterson argues that the combined effect of the Appeals Board's and VAIHCS's procedural decisions denied him due process in the revocation of his federal employment. A public employee facing termination has due process rights to certain pre-deprivation procedures, including "notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response." *Bradley v. Village of University Park*, 929 F.3d 875, 882 (7th Cir. 2019) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)).[1]

Contrary to Peterson's arguments, each of these requirements was met here. Peterson was given initial notice of the concerns over his standard of care when he was placed on summary suspension, notice of the Clinical Executive Board's decision to recommend his removal, and notice of the appealable Removal Decision. When a decision was made following the comprehensive review, the Proposed Removal gave Peterson a statement of the reasons for the removal and gave

---

[1] We observe that Peterson's due process challenge goes to his removal from federal employment; he does not raise a separate challenge to the procedures he received (or lack thereof) prior to his near-ten-month suspension leading up to the removal. That challenge would be subject to the balancing test established in *Gilbert v. Homar*, 520 U.S. 924 (1997).

him an initial opportunity to be heard by filing a reply within seven days. The Appeals Board gave Peterson even more process, providing him with a hearing to present testimony, call witnesses, and even granting multiple extensions for him to produce an expert in his defense.

Peterson supplies no basis to conclude that these procedures were insufficient to meet due process requirements. While the exclusion of his lengthy Rebuttal and refusal to provide a fourth extension to prepare his expert may have made his defense more difficult, Peterson was given months to prepare for his Appeals Board hearing and numerous opportunities to reply to the charges against him.

### III. Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.